### In re TALBOT & POGGI.

(District Court, S. D. New York. March 16, 1911.)

1. Sales (§ 296*)—Stoppage in Transitu — Goods in General Order—Termination of Transportation.

Where goods shipped to the bankrupts had been removed from the vessel by the customs authorities and remained in their custody, freight and duty unpaid, without any entry having been made of them, the transportation was not complete, and the sellers were entitled to exercise their right of stoppage in transitu by notice served on the collector of customs.

[Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 837–847; Dec. Dig. § 296.*]

2. Sales (§ 296*)—Stoppage in Transitu—Goods in General Order—Termination of Transportation.

Where goods shipped to bankrupts had been unloaded from a vessel and had been entered in the custom house through the bankrupts' broker, and remained in bonded warehouses in New York, freight paid but duties unpaid, the transitus was terminated, and the goods were not subject to stoppage in transitu by notice served on the collector of customs.

[Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 837–847; Dec. Dig. § 296.*]

In the matter of bankruptcy proceedings of Talbot & Poggi. Petitions against the bankrupts' trustee by Emil Grossmann, Moritz Esche, and Paul Reinhardt for the stoppage in transitu of goods shipped to the bankrupt. Granted in part.

This is a petition in a bankruptcy proceeding on behalf of the sellers of certain chattels against the trustee to stop them in transitu. The goods had been consigned to the bankrupts, and, before the notice was served, they had reached the Port of New York, and the bankrupts had received the bills of lading for them. The goods are of two classes: First, those which the bankrupts had entered through their factor, and which still remain in bonded warehouses in the Port of New York, the freight being paid and the duties remaining unpaid. The second class of goods are in what is called "general orders"; that is, they have been removed from the vessel by the customs authorities and remain in their custody, freight and duty still unpaid, no entry having been made of them. The sellers in each case have served a notice of stoppage in transitu upon the collector.

Charles Trosk, for petitioner.
Frederick L. Guggenheimer, for trustee.

HAND, District Judge (after stating the facts as above). So far as concerns the goods in general order the petition must succeed. This follows from Lord Kenyon's decision in Northey v. Field, 2 Esp. 613. A similar ruling is reported as being made by Lord Ellenborough in Nix v. Olive, reported in Abbott's Shipping, p. 377. In these cases the custody of the carrier is regarded as continued by the customs officials, who take the goods from the carrier and keep them till the buyer pays duties and freight. This case was followed likewise in Burnham v. Winsor, 4 Fed. Cas. 784, and in Mottram v. Heyer, 5 Denio (N. Y.) 629. Justice Barrett, on page 258 of Fraschieris v. Henriques, 6 Abb. Prac. (N. S.) 251, says that the contention was freely conceded at the bar.

As to the other goods, the transit was over, and the trustee must succeed. I do not mean that mere entry without unlading is in itself enough, because such a contention is answered by Harris v. Pratt, 17 N. Y. 249, in which goods had been entered while the property was still on board the vessel, and in which it was held that the transit was not over. That this was the theory appears from the words of Judge Denio on page 262 of 17 N. Y. On the other hand, in Mottram v. Heyer, supra, Chancellor Walworth, on page 632 of 5 Denio (N. Y.) distinctly says obiter that, if the goods have once been landed, the freight paid, and entry made, the custody of the officials is for the benefit of the buyer and the transit is at an end. The language is too long to quote, but the following words are significant:

"And in such a case (entry under a warehousing system) I have no doubt that the right of stoppage in transitu should be considered as at an end the moment the goods are thus deposited, after a perfect entry for that purpose has been made."

He based his actual decision upon the rule of Northey v. Fields, supra, holding (page 360) that:

"The facts in evidence would have justified the jury to find that the goods were not deposited in the public store, under any warehousing provisions of the revenue law, but had been taken there by the customs house officers be-

cause the consignees had neglected to pay the duties and obtain a permit to land the goods."

This is also the explanation given of the case by Justice Barrett in Fraschieris v. Henriques, supra, pages 259, 260, of 6 Abb. Prac. (N. S.), which is itself directly in point upon the facts at bar.

Cartwright v. Wilmerding, 24 N. Y. 521, although a case under the factor's act, is also significant, because the question there arose as to whether the consignee had got possession of the goods, which is the determining question in stoppage in transitu. The facts were that the factors had entered the goods for warehousing, had paid the freight, and deposited them in the bonded warehouse, but had not paid the duties. It was held that the custody for duties by the government did not destroy the buyer's possession. Chancellor's Walworth's dictum in Mottram v. Heyer, supra, is quoted at length apparently as though it had been part of the decision, and Justice Gould relies on it as an authority.

I can find no contradiction anywhere in the authorities, and I believe it to be well-settled law that goods which have been unladed and remain, freight paid, in bonded warehouse after entry, are in the possession of the buyer, and that the transit is at an end. The question always is, in the words of Judge Denio in Harris v. Pratt, supra, page 252 of 17 N. Y., whether "the goods remain in the possession of persons concerned in their transportation." The collector holding entered goods for duties only is not such a person. The case is analogous to this: Suppose that the carrier had deposited them in a warehouse which had run up charges against them. As soon as the consignee paid the freight, and the warehouseman had attorned to him, the transitus would be over, for the warehouseman's charges were for safe-keeping and did not concern the transportation of the goods. The custody of the collector under the warehousing system is even less a charge for transportation, and entry under the statute gives the full control which would result from attornment. The question all turns on whether the collector's possession is a mere continuance of the carrier's, or is solely for the duties, leaving the consignee otherwise full jus disponendi. When the freight has been paid and the goods entered, it is the latter.

Let an order pass in accordance herewith.